NEELY v. BROGDEN et al.    (No. 235–3420.)*

(Commission of Appeals of Texas, Section B. March 29, 1922.)

1. Perpetuities ⬡⟿4(1)—Defined.

A perpetuity is a limitation which takes the subject-matter of the perpetuity out of commerce for a period greater than a life or lives in being and 21 years thereafter, plus the ordinary period of gestation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Perpetuity.]

2. Perpetuities ⬡⟿4(1) — Period commences when instrument becomes effective.

In determining whether the period of time under the rule of perpetuities has been tran-

scended, the situation is to be viewed as of the date when the instrument becomes effective, that date in case of a will being the death of testator.

3. Perpetuities ⬡⟿4(2)—If period may be exceeded, rule violated.

If, by any possible contingency, a devise may violate the rule against perpetuities, it is void.

4. Wills ⬡⟿455—Where ambiguous canons of construction resorted to.

If the language of a will is not free from doubt or ambiguity, canons of construction may be resorted to.

5. Wills ⬡⟿446—Construction upholding will to be adopted.

As between two constructions of a will of which it is equally capable, that which will uphold it should be adopted.

6. Wills ⬡⟿460, 462, 463—Proper to look beyond mere grammatical form and to transpose, supply or reject words.

In construing a will, it is proper to look beyond the mere grammatical form to what may be termed the internal evidence of testator's intention; and with a view to show his intention, words may be transposed, supplied, or rejected.

7. Perpetuities ⬡⟿4(7)—Remainder held devised in fee and not for life, and not violative of rule.

A will giving a life estate to M. and C., nieces of testatrix, on the death of her husband, with remainder to the issue, if any, of M. and C. and if none, then the estate to pass to, N. and E. (other nieces) and to their issue, if any, "under the restrictions and conditions imposed on M. and C.," gives the fee to the issue of N. and E., as it is given to the issue of M. and C., and so does not violate the rule against perpetuities; the quoted words referring to N. and E. alone.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by P. A. Neely against Mary Catherine Brogden and others. Judgment for defendants was affirmed by the Court of Civil Appeals (214 S. W. 614), and plaintiff brings error. Affirmed.

McLean, Scott & McLean, of Fort Worth, for plaintiff in error.

Page & Jones, of Bastrop, White Cartledge & Wilcox, of Austin, and Maynard & Maynard, of Bastrop, for defendants in error.

McCLENDON, P. J. This suit was brought by P. A. Neely for the purpose of having a judicial construction of the will of Mrs. Etta Neely, deceased wife of plaintiff. The only question involved, is whether, under the fifth clause of the will, the issue of Nettie Etta Brogden and Myrtle Estelle Brogden are given a life estate only or the fee in the property devised to them. If the former, then at least as to one-half the estate the will is vio-

lative of the rule against perpetuities, and void.

The case was tried in the district court upon an agreed state of facts without a jury. The trial court held that the issue of Nettie and Estelle took the fee; that the will was therefore valid and rendered judgment accordingly. This judgment was affirmed by the Court of Civil Appeals. 214 S. W. 614.

The provisions of the will which have bearing upon the question at issue follow:

"Second: I give and bequeath unto my beloved husband, P. A. Neely, so long as he may live, all of my property, both personal and real, which I may own or be interested in at the time of my death.

"Third: Should the devisee herein depart this life before the devisor, then the estate herein mentioned shall be equally divided between Mary Catherine Brogden and Margie Carol Baker, conditioned however, that said estate shall pass to the said Brogden and Baker in trust, that is, they are to have possession of said estate and receive and use the revenues, profits and increase of the use of said estate, but shall not have the power or right to sell or dispose of the same, but must keep said estate in good condition and repair. The further obligation is imposed upon the said Brogden and Baker, to-wit:

"Fourth: Susie A. Thompson, if living at the time said estate passes to said Brogden and Baker, shall receive from the revenues derived from said estate, Two Hundred Dollars annually, same to be paid by the said Brogden and Baker.

"Fifth: The estate herein mentioned shall pass to the issue of the said Baker and Brogden, if any they have, but should there be no child or children born unto the said Brogden and Baker, then said estate shall pass to and be possessed by Nettie Etta Brogden and Myrtle Estelle Brogden, and to their issue, if any, under the restrictions and conditions imposed on the said Mary Catherine Brogden and Margie Carol Baker.

"Seventh: Should my beloved husband, P. A. Neely, survive me, then at his demise, the provisions of this will shall be invoked as above set out, and the beneficiaries therein named shall receive said estate in the manner therein designated."

From the agreed statement of facts it appears that all the property involved was the community of plaintiff and deceased; that deceased left no child or descendant; that the three Misses Brogden are sisters, and they and Miss Baker are nieces of deceased. The three Misses Brogden were still living and single at the time of the trial. Miss Baker married subsequent to the making of the will. She died March 8, 1914, leaving one child surviving her, William Neely Germany. The record does not show whether she was married, or whether her child had been born at the time of Mrs. Neely's death. The will was executed in 1906. The testatrix died in 1910. Susie A. Thompson was living and was about 60 years old at the time of the trial.

[1-3] A perpetuity has been defined as a limitation which takes the subject-matter of the perpetuity out of commerce for a period of time greater than a life or lives in being, and 21 years thereafter, plus the ordinary period of gestation. In determining whether this period of time is transcended, the situation must be viewed as of the date the instrument becomes effective, that date being, in case of a will, the death of the testator; and when so viewed, if by any possible contingency a devise violates the rule, it cannot stand, and must be held void. Anderson v. Menefee (Tex. Civ. App.) 174 S. W. 904, and cases there cited.

Viewing the situation as of the date of Mrs. Neely's death, it was within the possibilities that Nettie and Myrtle Brogden might have issue, and that such issue, or some of them, might live for a longer period than 21 years after the death of P. A. Neely and the Misses Brogden and Baker. If, therefore, the issue of Nettie and Myrtle take only a life estate, even though their ever taking at all be contingent on the happening of uncertain events, still, the situation presents the possibility of at least a part of the estate being held for a period longer than that permitted by the rule invoked, and if this construction should be given to the will it would be void at least to that extent.

[4, 5] It will readily be seen therefore, that the question at issue hinges upon the proper construction of the language employed in making the devise to Nettie and Myrtle Brogden and their issue. If that language is so plain as to admit only of the construction contended for by plaintiff, namely: That the clause "under the restrictions and conditions imposed on the said Mary Catherine Brogden and Margie Carol Baker" refers to the issue as well as to Nettie and Myrtle, and means that such issue take under the same restrictions and conditions as Mary and Margie, then it would be our imperative duty to give such meaning to the language, even though the effect would be to destroy the will altogether. On the other hand, if the language used is not free from doubt or ambiguity, then canons of construction may be resorted to, and that interpretation should be adopted which will uphold and not destroy the will. For:

"If this deed, or its parts, are equally capable of two constructions—one, consistent with his [the testator's] having intended to do that which it was lawful for him to do and one which is consistent with his having intended to do that which it was unlawful for him to do—the former will be adopted." Hancock v. Butler, 21 Tex. 808; Hunting v. Jones (Tex. Com. App.) 215 S. W. 961.

In an able opinion by Associate Justice Jenkins, the Court of Civil Appeals, after full review of the canons of construction applicable, reach the conclusion that the conditions and restrictions referred to were not

intended to apply to the issue of Nettie and Myrtle. Without attempting an elaborate discussion of the matter, we will set forth, as briefly as we may, the considerations which move us to concur in this conclusion.

[6] There is no hard and fast rule which requires that language, whether employed in an ordinary contract, a deed, or a will, be dissected and measured with mathematical precision. It is always permissible, in fact proper, to look beyond mere grammatical form to what might be termed the internal evidence of the writer's intentions, and especially is this true in construing wills. In this connection we quote from Hawes v. Foot, 64 Tex. 27:

" 'There is no more clearly established rule of construction, as applicable to wills, than that words or clauses of sentences, or even whole paragraphs, may be transposed to any extent, with a view to show the intention of the testator. Pond v. Bergh, 10 Paige [N. Y.] 140. Words and limitations may be transposed, supplied, or rejected. But it must appear, either from the words of the will, or extrinsic proof, admissible in all of the words, that the transposition does really bring out the true intent of the testator, and thus render what was before obscure, clear.' 1 Redf. on Wills (4th Ed.) p. 432.

" 'A technical construction of words and phrases, although prima facie the one which should prevail, will not be carried to the extent of defeating any obvious general intention of the testator.' 1 Redf. on Wills (4th Ed.) top p. 436.

"The same author says there is no doubt that a particular construction of words, although somewhat variant from their more natural and obvious import, may be strengthened by reference to extraneous circumstances. 1 Redf. on Wills (4th Ed.) top p. 431. It is said, in Currie v. Murphy, 35 Miss. 473, that 'such facts are always admissible in aid of the construction of wills, to the extent of explaining doubts, or removing uncertainties, when with that aid the intent is clear'—citing [Goodhue v. Clark] 37 N. H. 525; [Travis v. Morrison] 28 Ala. 494; [Succession of Thorame] 12 La. Ann. 384; 4 Russ. 532, note; 12 Price, 213; [Edens v. Williams' Ex'r] 3 Murphy [7 N. C.] 27."

[7] Viewing the will as a whole, we do not think it requires a strained construction of the language to hold that, when the testatrix said that Nettie and Myrtle and their issue (if the language be so read), should take under the same conditions and restrictions as Mary and Margie, she meant that the issue of the former should take as the issue of the latter. For it may be said that, where property is given to A. for life with remainder to his issue, such remainder is in a sense a condition of A.'s taking. So here the conditions under which the first two nieces take are for life, with remainder to their issue in fee. This construction is obtained by regarding, as understood, and supplying, at the end of the sentence, the words "and their issue"; which, under the above authority is permissible in order to arrive at the real intent of the testatrix.

On the other hand, if the view be taken that the issue of Nettie and Myrtle were meant to take under the same conditions as Mary and Margie, then, to be strictly grammatical, we must apply to Nettie and Myrtle and their issue all conditions and restrictions under which Mary and Margie take; among which are that they take simultaneously, jointly and in equal shares. This construction would lead to a practical absurdity; for in the absence of very clear language to that effect, it could not reasonably be supposed that one would leave property to two parents and the children of each, all to take simultaneously and in equal shares. The natural thing to be expected, in the light of common experience, is that children should take after the death of their parents and per stirpes. This improbable construction may be avoided by holding that the clause "under the same condition," etc., was meant to refer to or "modify" the latter two nieces alone, and not their issue, in which event the intention of the testatrix would be accurately expressed by a slight transposition, making the last part of the sentence read "then said estate shall pass to and be possessed by Nettie E. Brogden and Myrtle E. Brogden under the restrictions and conditions imposed on the said Mary C. Brogden and Margie C. Baker, and to their issue, if any." We might add, in this connection, that the rules of grammatical construction are not so inflexible as to require that a modifying clause be always placed immediately following the words modified.

It is therefore apparent that the clause under consideration is not entirely free from ambiguity, and calls for construction; and when we apply the rules above announced it becomes imperative, we think, to hold that the issue of the two latter nieces were meant to take in the same manner as the issue of the two former nieces, that is, after determination of the life estates of their parents, per stirpes and in fee simple.

This, we think, is the common sense practical construction which should be given to the language employed. No reason is suggested why the issue of the latter nieces should be treated in any different manner from those of the former. They were equally persons not in esse and who might never come into being; and aside from this, to hold that the testatrix intended to grant only a life estate to the issue of the latter two nieces would be to assume that she had an intention which was directly in conflict with a positive provision of our statute law, and which might render every provision of her bounty nugatory and the making of the will a useless task.

We conclude that the judgments of the district court and Court of Civil Appeals should be affirmed.

CURETON, C. J. Concurring in the conclusion that the Court of Civil Appeals correctly interpreted the will, it is ordered that the judgments of the district court and of the Court of Civil Appeals be affirmed.