## MAYFIELD v. PARKS.
### No. 3958.

Court of Civil Appeals of Texas. Amarillo.
Feb. 15, 1933.

Rehearing Denied March 15, 1933.

Lackey & Lackey, of Stinnett, and Hoover, Hoover & Cussen, of Canadian, for appellant.

Works & Bassett, of Amarillo, for appellee.

HALL, Chief Justice.

Mrs. Ella Parks died, leaving the following will:

"Ella Parks wishes at her death my husband to have her property both real estate and personal property and at my husbands death to be equally divided among our children, Hilma, William and Davis and if there should be other children born to us share equally with Hilma, William and Davis.
"[Signed] Ella Parks, Will."

Mrs. Parks was the second wife of Hiram Parks and had no children of her own. Hiram Parks instituted this proceeding in the county court to probate said will. Probation thereof was contested by her father, J. W. Mayfield, Sr. The county court admitted the will to probate and Mayfield appealed to the district court, where the case was tried upon special issues submitted to a jury. Based upon the answers of the jury, the district court also admitted the will to probate, hence the appeal to this court.

The charge of the court defines "mental capacity" and "undue influence." In response to the issues submitted, the jury found that Ella Parks executed the will offered in evidence as her last will, that it had not been revoked, that she possessed mental capacity (as that term had been defined by the court) to execute the will and at the time of the execution was not acting under undue influence (as that term had been defined by the court) to such an extent as that she was induced to make a different disposition of her property from what she would have made had not such influence been exerted.

■ The first proposition is to the effect that the will creates a perpetuity in violation of the Constitution, art. 1, § 26. This contention is without merit.

■ A perpetuity is any limitation tending to take property out of commerce for a long-

er period than a life or lives in being and twenty-one years beyond and in case of a posthumous child, a few months more allowing for the term of gestation. It is such a limitation of property as renders it inalienable beyond the period allowed by law. Bouvier's Law Dictionary.

It is defined in Neely v. Brogden (Tex. Com. App.) 239 S. W. 192, 193, as follows: "A perpetuity has been defined as a limitation which takes the subject-matter of the perpetuity out of commerce for a period of time greater than a life or lives in being, and 21 years thereafter, plus the ordinary period of gestation. In determining whether this period of time is transcended, the situation must be viewed as of the date the instrument becomes effective, that date being, in case of a will, the death of the testator."

No children were born to Parks and his wife. The estate created by the will is a contingent remainder vesting a life estate in Hiram Parks with remainder to the stepchildren named in the will who would take immediately upon the death of their father. Rae v. Baker (Tex. Civ. App.) 38 S.W.(2d) 366; Munger v. Munger (Tex. Civ. App.) 298 S. W. 470; Neely v. Brogden (Tex. Com. App.) 239 S. W. 192, 214 S. W. 614.

By the second proposition it is insisted that because the deceased did not bequeath any of her property to her kin by consanguinity, although the property had been given her by her father, the contestant herein, this was a circumstance showing weak mental capacity and undue influence and the court should have so instructed the jury as requested by special charge No. 2. It is further insisted that because the evidence discloses that Hiram Parks was with the testatrix all during her illness, including the date of her death, and by reason thereof had ample opportunity to unduly influence her in her weakened condition to execute an unnatural will, the court should have instructed the jury that they might consider that fact as requested in special issue No. 3. The next contention is that in determining the condition of the mind of testatrix when considering the question of undue influence, the court should have instructed the jury that they might take into consideration whether at the time she executed the will her mind was strong or weak and whether she would be easy or hard to influence.

The appellant presented three special issues which the court refused. These form the basis for the above contentions. A sample of which is as follows: "You are instructed as a part of the law in this case that in considering the question of undue influence on the testatrix in this will, and as to whether or not said will was procured by the undue influence of the beneficiaries exercised upon said testatrix by said beneficiaries, you may consider as a circumstance the opportunity if

any you find from the evidence that said beneficiaries had exercised upon said testatrix undue influence; you are instructed in this connection, however, that an opportunity alone is not sufficient to prove undue influence was procured, but merely as a circumstance in connection with any other evidence if any, to establish undue influence."

By the second special charge the jury was instructed in the same way that they might consider as a circumstance in determining her mental capacity the fact that she did not give any of her property to any of her blood kin.

The court did not err in refusing to give these instructions. They singled out certain items of the testimony and emphasized the effect thereof.

R. S. art. 2189, relating to the matter of giving special issues, provides: "In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

In T. & P. Ry. Co. v. Perkins (Tex. Com. App.) 48 S.W.(2d) 249, 251, which involved the right of a servant to recover for injuries received and where the court had submitted an issue as to whether the danger of gravel flying and bouncing when being tamped and shoveled under the ties was so obvious that the injured party, in the exercise of ordinary care, should have known it, he gave this instruction: "To aid you in answering this issue (issue No. 6) * * * you are instructed that the plaintiff was not required to anticipate the negligence, if any, of Robert Smith at the time plaintiff received his injuries, but that plaintiff was entitled to rely upon Robert Smith exercising ordinary care in the manner of discharging his work unless plaintiff had actual knowledge of negligence, if any, on the part of said Robert Smith, or said negligence, if any, was so open and obvious that in discharging his duties plaintiff must have known of it and appreciated the danger arising to him therefrom in time to have avoided the consequences thereof."

Judge Sharp said: "It is clear that the special charge given was not an explanation such as contemplated by the statute, and is not a definition. It is clearly a general charge upon the issue of assumed risk and is improper in a charge where a case is submitted to the jury upon special issues."

In the case of Humble Oil & Refining Co. v. McLean (Tex. Com. App.) 280 S. W. 557, in discussing instructions of this kind, Judge Harvey, referring to the above quoted statute, said it is obvious from a reading of these statutory provisions that whenever special issues are submitted to the jury, a charge which undertakes to instruct the jury as to the law pertaining to any phase of the case, excepting such explanations and definitions

as are allowed by the statute, is not permissible. Kemper v. Police & Firemen's Ins. Ass'n (Tex. Com. App.) 48 S.W.(2d) 254; Winters Mutual Aid, etc., v. Reddin (Tex. Com. App.) 49 S.W.(2d) 1095; Radford Gro. Co. v. Andrews (Tex. Com. App.) 15 S.W.(2d) 218; Stokes v. Snyder (Tex. Com. App.) 55 S.W. (2d) 557.

We find no reversible error in the record, and the judgment is affirmed.