## BOCKEL v. FIDELITY DEVELOP-MENT CO. et al.

### No. 10292.

'Court of Civil Appeals of Texas. Galveston.

Jan. 21, 1937.

Rehearing Denied Feb. 11, 1937.

Lewis Fogle, of Houston, for appellant.

Baker, Botts, Andrews & Wharton and Tom M. Davis, all of Houston, for appellees.

GRAVES, Justice.

This statement, taken from appellant's brief, is conceded to be substantially correct:

"The case was tried upon an agreed statement of facts. The material facts are as follows:

"Erasmus Bockel, appellant's grandfather, owned a tract of land in Harris County of which the one acre herein involved was a part. He died in 1903, leaving a will which was duly probated. The will provided:

"'It is my will and wish that one acre square out of my said homestead tract the center of which shall be the present graves of the deceased members of my family, shall be set aside by my executors hereinafter named as a family graveyard, never to be sold, but to be preserved and kept by them as a family burial ground for my family and the families of my said children and for no other purpose.'

"The executors set aside as a cemetery the one acre of ground sued for herein.

"Later Erasums Bockel and his wife (appellant's grandparents) and Albert Bockel (appellant's father), and other members of his family were buried in the cemetery, as well as other persons who were not members of the Bockel family, including four negroes whose families had worked for Erasums Bockel. Albert Bockel had no children other than appellant. He was married but the one time, and that to appellant's mother, now Elizabeth Hausman.

"Albert Bockel, appellant's father, died in 1914, leaving a will, After making specific bequests, which do not affect the cemetery, he left the residue of his estate to Frederick Bockel, appellant's uncle. The probate of his father's will was contested by appellant, and finally the contest was compromised by the terms of which the will was admitted to probate and appellant was deeded certain properties and given some money.

"In each of the several instruments and muniments of title of the lands adjoining the one-acre cemetery from Erasmus Bockel down to the Houston Land Corporation (appellee Fidelity Development Company's immediate grantor), the one-acre cemetery and passageways thereto were expressly excepted from the conveyance.

"About the month of June, 1931, the Houston Land Corporation, desiring to acquire the one-acre cemetery tract which was excepted from the deed to it, negotiated through Forest Park Cemetery an exchange of the cemetery tract for lots in Forest Park Cemetery. Such negotiations were had with all of the surviving devisees named in the will of Erasmus Bockel and the heirs of those who were deceased, except appellant. Neither appellant nor his guardian had any notice of the intent to acquire the cemetery tract or to remove the bodies therefrom; nor did appellant or his guardian have any knowledge of such negotiations until after the bodies had been removed. In pursuance of such negotiations all the bodies were removed from the cemetery-tract, and were reinterred in the Forest Park Cemetery, which is a modern and well kept cemetery.

"After the removal of the bodies and of the tombstones and other markers connected with the graves, in further pursuance of their agreement, the said devisees and heirs, except appellant, executed their deeds of conveyance to the Forest Park Cemetery, relinquishing all their rights in the one acre cemetery. In return the Forest Park Cemetery executed deeds to grave-lots to the grantors in the deeds to it, in which they recited that the one-acre tract 'known as the Bockel Graveyard, has been completely abandoned for burial and cemetery purposes' by the Grantees. The Forest Park Cemetery then executed a deed of conveyance of the one-acre tract to the Houston Land Corporation.

"Prior to the year 1930, the city limits of the City of Houston were extended so as to include the cemetery and its vicinity. About the year 1931, part of the land adjacent to the cemetery, and other adjoining lands, were subdivided into lots and blocks with paved streets, and has since developed into a high-class residential district in the City of Houston.

"A few months after he learned that the bodies of his ancestors and relatives had been removed from the cemetery, appellant brought this suit, asking that he have judgment declaring and establishing the one acre as a cemetery, and enjoining the appellees from interfering with the use of such acre as a cemetery and from interfering with the ingress and egress thereto, and that a passageway from nearby streets to said cemetery be established.

"The case was tried before the court without a jury, upon the agreed statement of facts, and briefs of counsel. After taking the cause under advisement, the court rendered judgment for appellees, without stating the reasons therefor."

Inveighing in this court against such adverse determination to himself below, the appellant in each of four propositions of law not only asserts the one acre in controversy to have become dedicated as an inalienable private cemetery—under the quoted provision of his grandfather's will and the subsequent burial of many members of the testator's family therein—but, further, that he himself, in virtue alone of being the dedicator's grandson, had become vested with such a continuing right of sepulture therein as entitled him (whatever the relations, rights, or titles of the appellees, or those down under whom they claimed)-to the injunctive relief he thus prayed for: "Judgment declaring and establishing said one acre of land above described to be a cemetery, and that defendants be restrained and enjoined from interfering with the use of said one acre of ground as a cemetery and from interfering with the ingress and egress thereto and from, and that a passageway convenient to and accessible from nearby streets or roads be established."

This court, after careful examination of all the facts detailed in the agreed statement, is unable to accept appellant's view or to sustain any of his contentions. In the first place, as indicated, he grounded his entire claim upon the single detached fact that he was his grandfather's grandson, declaring that the provision in the will followed by a setting apart and using of a portion of the one acre for a time as the private family graveyard the testator had desired to become inalienably established as such had become just that in his favor, without any other alleged relationship of himself toward it than his stated kinship; at the same time he neither alleged nor proved any financial or other damage to himself than the mere refusal of the appellees to recognize such abiding sepulture

right in him, conceding also that he had never had any right or title to any land that passed under his grandfather's will, his father having disinherited him and willed the land immediately surrounding the one-acre tract to his uncle, Frederick Bockel, and it further appearing that he had never before filing his application for such injunctive relief on September 16 of 1933 asserted or claimed this or any other right in the one-acre tract.

 In short, appellant simply declares that his grandfather's will, followed by the setting aside of the one-acre and the burial of the different members of his family therein for a time, constituted it a perpetual private graveyard for any member of the testator's family so long as he desired it to remain as such, and that he himself by virtue alone of his membership in such family, and without even declaring that he intended to be buried therein, had such a right of sepulture in the whole of the one acre as entitled him absolutely to the right he sought against the appellees, whatever their relations thereto were then or had before been; the assertion of such a right of sepulture in appellant fails, in the first place, because the provision in the grandfather's will so undertaking to dedicate the land forever as a cemetery for his children and their families is plainly void as contravening article 1, section 26, of the Texas Constitution, declaring that perpetuities are contrary to the genius of a free government and shall never be allowed. Paschal v. Acklin, 27 Tex. 173, 174; Scott v. Logan, 122 Tex. 636, 64 S.W. (2d) 141; 5 Ruling Case Law, 336; McIlvain v. Hockaday, 36 Tex.Civ.App. 1, 81 S.W. 54; Mason v. Bloomington Library Association, 237 Ill. 442, 86 N.E. 1044, 15 Ann.Cas. 603; Burke v. Burke, 259 Ill. 262, 102 N.E. 293; McCartney v. Jacobs, 288 Ill. 568, 123 N.E. 557, 4 A.L.R. 1120; Smith v. Heyward, 115 S.C. 145, 105 S.E. 275; Shippee v. Industrial Trust Co., 43 R.I. 115, 110 A. 410, 14 A.L.R. 115.

Appellant, therefore, having taken nothing whatever under this invalid section and not having been a legatee or devisee under any other provisions of his grandfather's will, nor indeed under that of his father either, was apparently left with no right at all in such graveyard by virtue only of his kinship with them, unless it was the privilege of visitation, ornamentation, and protection of the graves of such of his relatives as were buried therein, and then only so long as they remained there. Wooldridge v. Smith, 243 Mo. 190, 147 S.W. 1019, 40 L.R.A.(N.S.) 752; Hutchinson Land Co. v. Whitehead Bros. Co., 127 Misc. 558, 217 N.Y.S. 413, 417; 11 Corpus Juris, 57.

Even that possible burden was lifted from this land by the admitted removal of all these bodies from and the abandonment of this one acre as their resting place, next herein commented on.

On the face of it, this will attempted to establish a private family burial ground "for my family and the families of my children and for no other purpose," to the exclusion of the public or anybody else; hence the bequest was not for any charitable use within the rule applied by all these authorities, and therefore ran directly counter to our constitutional inhibition against perpetuities.

 In the second place, if it could be properly said that appellant ever had any right to be buried on this land, under the undisputed facts here, that was not only a mere license, unsupported by any consideration, and revocable at the will of the fee owners of the land, but was also subject to an abandonment and termination of the graveyard as such; since under the undisputed facts appearing in the agreed statement. the fee owners had both expressly revoked any such license in the appellant and had also completely abandoned and obliterated the graveyard from this land, appellant was left with nothing whatever; especially would this result seem to follow here, since the right of burial is either an easement (that is, an interest in the land), or a license (which is a personal and revocable privilege), neither of which, under the undisputed facts, appellant had at the time he sought this writ; this seems self-evident from the fact that those devisees and heirs of Erasmus Bockel who so "relinquished all rights they had in the Bockel graveyard" to and acted with the Forest Park Cemetery in removing all bodies from and abandoning the one-acre tract as a family burying-place, in exchange for grave lots for themselves in Forest Park, then owned the entire fee to all of Erasmus Bockel's lands to the exclusion of appellant, wherefore such other devisees and heirs were fully empowered in law to do what in fact they did—that is, to remove the bodies from this one acre, abandon it finally as a family burial ground, and convey away the title thereto

as being appurtenant to their own completely surrounding lands. McGuire v. Trustees, 54 Hun, 207, 7 N.Y.S. 345; Hutchinson Land Co. v. Whitehead Bros. Co., 127 Misc. 558, 217 N.Y.S. 413; 11 Corpus Juris, 58; Bitney v. Grim, 73 Or. 257, 144 P. 490; Clarke v. Keating, 183 App.Div. 212, 170 N.Y.S. 187; Van Buskirk v. Standard Oil Co., 100 N.J.Eq. 301, 134 A. 676; Badeaux v. Ryerson, 213 Mich. 642, 182 N.W. 22; Frost v. Columbia Clay Co., 130 S.C. 72, 124 S.E. 767.

There are doubtless other grounds upon which the judgment of the learned trial court might be sustained, but those adverted to are deemed sufficient, hence further discussion is foreborne. The judgment will be in all things affirmed.

Affirmed.